C. Richard Heniksen, Jr., Esq. #1466
Timothy J. Williams, # 10850
HENRIKSEN & HENRIKSEN, P.C.
320 South 500 East
Salt Lake City, Utah 84102
Telephone: (810) 521-4145
Facsimile: (810) 355-0246

Phillip Kim, Esq. (admitted *pro hac vice*)
THE ROSEN LAW FIRM, P.A.
350 Fifth Avenue, Suite 5508
New York, NY 10118
Telephone: (212) 686-1060
Facsimile: (212) 202-3827

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STAN OVERTON, individually and as TRUSTEE OF THE MAY 17, 2003 BARON ST. JOHN REVOCABLE LIVING TRUST;<br><br>        Plaintiff,<br>  vs.<br><br>ATLAS STOCK TRANSFER CORPORATION ,<br><br>        Defendant | Index No. 2:06CV00153 BSJ<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge Bruce S. Jenkins |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff Stan Overton individually and as Trustee of the May 17, 2003 Baron St. John Revocable Living Trust moves for summary judgment against defendant Atlas Stock Transfer Corporation ("Atlas") on the grounds that Atlas wrongfully refused to register the transfer of Plaintiff's restricted stock in Signalife, Inc., f/k/a Recom Managed

Systems (the "Company" or "Signalife" or "Recom") under the Delaware Uniform Commercial Code ("U.C.C.").  As such, Plaintiff seeks (a) a judgment declaring that Atlas' failure to transfer the Share Certificates is in violation 6 Del. C. § 8-401, (b) an Order directing Atlas to remove the restrictive legends and to register the transfer of Plaintiff's  Share Certificates, and (c) a judgment for damages under 6 Del. C. §8-401(b) for loss in value of the Share Certificates since Plaintiff first requested defendant to register transfer of the Share Certificates.  In the alternative, Plaintiff seeks judgment in his favor based on the common-law tort of conversion for the full value of his Share Certificates as of the date of his first request to defendant for transfer.

In particular, Atlas, having a statutory duty to do so, failed to remove the restrictive legends from Plaintiff's share certificates, despite the fact that all requirements under the Securities Act of 1933 ("Securities Act") were met, and proper opinions of counsel and other documentation were presented to Atlas.  Under applicable law, upon proper presentation of the opinion of securities counsel that the proposed transfer is not in violation of the securities laws, together with Overton's authorizations and requests to transfer the share certificates, Atlas was obligated to issue clean certificates and register transfer of the shares to the bona fide purchaser for value.  Atlas admits in its October 10, 2005 letter that Plaintiff has complied with the requirements for transfer.  As a result of Atlas' failures, Plaintiff has and is suffering damages as the price of Signalife stock has been in a decline from $3.30 a share on August 17, 2005 to a share price below $3.00 at present.  As such, for the reasons more fully stated below, the Court should grant summary judgment for Plaintiff.

###### i.        Procedural History

Plaintiff commenced this action by filing a Complaint on February 21, 2006. (Docket no. 1).  On February 23, 2006, Plaintiff filed his First Amended Complaint. (Docket no. 2).  On March 21, 2006, defendant Atlas filed its Answer and a Third Party Complaint against Signalife.  (Docket nos. 8-9).  Thereafter, on May 31, 2006 Atlas filed a Notice of Voluntary Dismissal against Signalife.  (Docket no. 15).  Discovery in this matter commenced after the June 2, 2006 status conference.  (Docket no. 20).

### STATEMENT OF UNDSIPUTED MATERIAL FACTS

1.      On or about October 23, 20002 non-party Baron St. John ("St. John") acquired restricted stock of Recom (now known as SignaLife) pursuant to a settlement agreement entered into by and between St. John along with several other investors on the one hand, and non-party Budimir Drakulic ("Drakulic")—a Recom officer on the other.  (See Declaration of Phillip Kim ("Kim Decl.") Ex. 1).

2.      At all relevant times herein Recom was a Delaware Corporation.  (See Edgar filings, http://www.sec.gov).

3.       As part of the settlement agreement, the 29,444 shares of restricted common stock of Recom was issued to St. John and to other investors on or about October 23, 2002 in exchange for a collective payment of $34,000 and a full release of claims against Drakulic.  (See Kim Decl. Ex. 1.)

4.      Neither the Plaintiff, Recom, nor Atlas were parties to that settlement agreement.  (See Kim Decl. Ex. 1.)[1]

5.      Recom changed its name to Signalife on or about November 2005. (See Form 8-K 11-8-05, http://www.sec.gov).

6.      In April 2, 2003, Recom announced a three-for-one stock split for holders of the Company stock as the close of business on April 11, 2003.  (See Kim Decl. Ex. 2).

7.      On May 17, 2003 two share certificates bearing nos. 3790 and 4287 of restricted RECOM common stock for 29,444 and 58,888 shares, respectively[2],  (collectively "Share Certificates") were transferred from St. John to the Baron St. John Revocable Living Trust, Stan Overton, as Trustee (the "St. John Trust")  (See Declaration of Stan Overton ("Overton Decl.") Overton Decl. Ex. 1,  ¶ 4.)

8.      Prior to St. John's transfer of the Share Certificates, St. John sent a letter to Drakulic informing him of the transfer.  (See Overton Decl. Ex. 2.)

9.      Neither Drakulic, nor RECOM objected to the transfer to the St. John Trust. (See Overton Decl. ¶ 5.)

10.     The St. John Trust maintained continued ownership of the Shares Certificates in the name of its trustee Overton since the creation of the St. John Trust (May 2003) without Recom raising any issues concerning the

---

[1] Recom's Form 10KSB filed with the SEC, explicitly states that it was "not a party" to the settlement agreement between Drakulic and St. John.  See Recom Form 10KSB, p. 8, filed 3/26/03.  (available for viewing http://www.sec.gov.)
[2] The 58,888 shares were issued pursuant to the three-for-one stock split announced by the Company on April 2, 2003.

transferred shares, or objecting in any way to Overton holding the shares as trustee of the St. John Trust prior the instant attempts to have the shares registered and transferred.  (See Overton Decl. ¶ 14.)

11.   The Share Certificates transferred to Plaintiff contained the following Rule 144 restrictive legend:

> The shares represented by this certificate have not been registered under the Securities Act of 1933.  The shares have been acquired for investment and may not be altered sold or otherwise transferred in the absence of an effective Registration Statement for the shares under Securities Act of 1933 **or a prior opinion of counsel** satisfactory to the issuer that registration is not required under the Act.  (See Overton Decl. Exs. 3-4.) [emphasis added].

12.   On August 16, 2005 Overton transmitted two letters to Atlas (one for each Share Certificate) requesting that Atlas issue to him new Share Certificates without the restrictive legends set forth above or any other restrictions of transfer.  (See Overton Decl. Ex. 5.)

13.   The letters also advised that Atlas would shortly be receiving an opinion letter from Overton's special securities counsel, Robert M. Strumor, Esq. certifying that the transfer of the securities did not violate the securities laws.  (See Overton Decl. Ex. 5).

14.   On August 17, 2005, Robert Strumer, Esq., as special securities counsel to Overton, sent two opinion letters (one for each of the Share Certificates) to Atlas requesting that Atlas issue new Share Certificates registered in the name of Overton and without any restrictive legend or other restriction on

transfer. (See Declaration of Robert M. Strumor, Esq. ("Strumor Decl.") Exs. 1-2.)

15.     The August 17, 2005 opinion letters in all relevant aspects were the same. The letters state that in the opinion of Mr. Strumor: (1) the Common Stock was duly authorized and validly issued by the Company; (2) Overton acquired the common stock on or about May 17, 2003 and has been the registered owner continuously since September 26, 2003 (58,888 shares) and December 14, 2004 (29,444 shares) and is entitled to the Section 4 (1/12) exemption from registration for a private transactions; (3) Overton is not an affiliate of the Company as defined in the Securities and Exchange Act of 1933 ("1933 Act") or in Rule 144 nor was Overton an affiliate during the 90 days preceding the date of the opinion letters; (4) Overton is lawfully entitled to the exemption from the registration requirements of the 1933 Act provided for in Rule 144, and has satisfied the two year holding period requirement and therefore may be issued new Share Certificates without restrictive legend or any other restrictions on transfer or sale; and (5) no other opinions were necessary for Atlas to remove the restrictive legends from the Share Certificates.    (See Strumor Decl. Exs. 1-2.)

16.     On August 17, 2005, the closing price of Signalife's common stock, that is traded on the American Stock Exchange, was $3.30.  Since that time, the Company's stock has experienced a steady downtrend and as of July 7, 2006 trades at $2.90 per share.  (See Kim Decl. Ex. 3.)

17.     On or about August 18, 2005, Overton sent authorizations, containing his guaranteed signature—by Bank of America-- to Atlas to transfer his Share Certificates to the Allan Migdall Attorney Trust Account in furtherance of the sale of the Share Certificates to a bona fide purchaser for value.   (See Overton Decl. Exs. 6-7.)

18.      By letter dated September 21, 2005, Mr. Strumor sent another request to Atlas demanding that the restrictive legends be removed from the Share Certificates.  (See Strumor Decl. Ex. 3.)

19.     By letter dated September 29, 2005, RECOM, through its counsel, Paul M. Taylor, Esq., informed Atlas that "under no circumstances" should Atlas issue, replace, or otherwise deal with the Share Certificates because of St. John's purported breach of an agreement St. John entered into in 2002, presumably the settlement agreement between St. John and Drakulic, to which neither RECOM, the St. John Trust, nor Overton was a party.  (See Strumor Decl. Ex. 4.)

20.     On October 10, 2005, Atlas notified RECOM that the Share Certificates have been presented to Atlas by Overton for registration of transfer.  Atlas stated in the letter that "[I]t appears that the certificates are in due form for registration of transfer…."  The letter further states Atlas "shall proceed to register the transfer as requested" unless RECOM "do one of the following":

a. Obtain an appropriate restraining order or injunction issued by a court of competent jurisdiction;

b. Furnish to us a satisfactory indemnity bond protecting Prevectus Pharmaceuticals, Inc. [sic] transfer agent and registrar, or other agent or employees from any loss which it or they may suffer by reason of refusal to register transfer if [sic] the securities as requested.  (See Kim Decl.  Ex. 4).

21. By letter dated October 12, 2005 Mr. Strumor, reminded Atlas of its independent duties owed to Overton and that the purported reason proffered by RECOM in the September 29, 2005 letter did not provide a basis for Atlas to refuse to remove the restrictive legend and transfer the share certificates. Mr. Strumor demanded that Atlas issue and transfer the share certificates. (See Strumor Decl. Ex. 5.)

22. In an October 21, 2005 letter, RECOM reiterated its prior instructions to Atlas not to transfer or lift any restrictive legends from the Share Certificates.  The letter further states that "If you intend to lift the legends …. notwithstanding our instructions to you, please immediately notify me in writing…."  (See Kim Decl. Ex. 5.)

23. At all relevant times herein, Plaintiff has no reason to believe the applicable laws concerning taxes have or will be violated if the Shares Certificates are registered and transferred as Plaintiff had requested of Atlas.  (See Overton Decl. ¶ 12.)

24. At all relevant times herein, Plaintiff is not aware of any applicable restrictions of transfer of the Share Certificates other than the restrictive legends.  (See Overton Decl. ¶ 13.)

## ARGUMENT

## POINT I

## ATLAS WRONGFULLY REFUSED TO REGISTER THE TRANSFER OF SECURITIES UNDER THE DELAWARE U.C.C.

### i.    DELAWARE LAW GOVERNS ATLAS' DUTIES AS TRANSFER AGENT

Under the UCC, the law of the state of incorporation of the issuer governs transfer duties related to certificated securities, including the obligations of a transfer agent.  See Utah §70-8-106; 6 Del. C. § 8-110; Cowen & Co. v. Atlas Stock Transfer Co., 695 P.2d 109, 112 (Utah 1984); see also Yuen v. U.S. Stock Transfer Co., 966 F. Supp. 944, 950 (C.D. Cal. 1997); Catizone v. Memry Corp., 897 F. Supp. 732, 735 (S.D.N.Y. 1995). Because RECOM is a Delaware corporation (See Statement of Undisputed Facts ("SUF") ¶ 2.), the law of Delaware, specifically the Delaware Uniform Commercial Code governs this dispute.  Id.

### ii.    DELAWARE U.C.C. § 8-401 ATLAS HAS A DUTY TO REGISTER AND TRANSFER THE SHARES.

It is well settled in Delaware and in other jurisdictions a request to remove restrictive legends from stock certificates is deemed to be equivalent to a request to register transfer.  Under 6 Del. C. § 8-407, a transfer agent owes the same duties to a holder of a stock certificate as are owed by the issuer.  Additionally, under 6 Del. C. § 8-401 the issuer is legally obligated to register transfer of securities, if the requested transfer satisfies the requirements within that section.  Consequently, a transfer agent who refuses to register transfer when such transfer is proper can be held liable along with the issuer for damages under § 8-401.  See Bender v. Memory Metals, Inc., 514 A.2d 1109,

1115 (Del. Ch. 1986) (request to remove a restrictive legend is a "ministerial act" constituting a request to transfer) [3]

### iii.    PLAINTIFF SATISFIED SECTION 8-401.

Section 8-401 of the Delaware UCC provides that:

(a) If a certificated security in registered form is presented to an issuer with a request to register transfer or an instruction is presented to an issuer with a request to register transfer of an uncertificated security, the issuer shall register the transfer as requested if:

> (1) under the terms of the security the person seeking registration of transfer is eligible to have the security registered in its name;

> (2) the endorsement or instruction is made by the appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;

> (3) reasonable assurance is given that the endorsement or instruction is genuine and authorized (Section 8-402);

> (4) any applicable law relating to the collection of taxes has been complied with;

> (5) the transfer does not violate any restriction on transfer imposed by the issuer in accordance with Section 8-204;

> (6) a demand that the issuer not register transfer had not become effective under Section 8-403, or the issuer has complied with Section 8-403(b) but no legal process or indemnity bond is obtained as provided in Section 8-403(d); and

> (7) the transfer is in fact rightful or is to a protected purchaser.

When Sections 8-401(1)(1) –(7) are satisfied "the issuer has a duty to register a transfer of shares that are presented to the issuer in registered form together with a request to register the transfer.  See Bender, 514 A.2d at 1114 (*citations omitted*); Cowen & Co.,

---

[3] Similarly, other jurisdictions have followed Bender's rationale.  See American Sec. Transfer, Inc. v. Pantheon Indus., Inc., 871 F. Supp. 400, 403-05 (D. Colo. 1994)(rejecting transfer agent's defense it had no duty under § 8-401 to remove Rule 144 legend from certain stock certificates); In re Marriage of Susan D. Devick, 753 N.E.2d 153, 160 (Ill. App. Ct. 2000)(Illinois version of UCC § 8-401 applies to reissuance of a stock certificate without a restrictive legend); Kenler v. Canal Nat'l Bank, 489 F.2d 482, 486 (1st Cir. 1973)(proceeding on assumption that a request to remove legends is substantially equivalent to a request to register transfer).

695 P.2d at 112 ("if a party requesting transfer of a security can show that it has met the preconditions of section 70A-8-401(1) and that the issuer or transfer agent has unreasonably delayed or refused to register the transfer, that party has an action for damages against the issuer and/or the transfer agent.").

The evidence is clear that subsections 1 through 7 of §8-401 were fully satisfied when Plaintiff presented his request for defendant Atlas to remove the restricted legends from the Share Certificate as follows:

(1) Overton made the written request to transfer the securities.  (SUF¶¶ 7, 8, 10, 12-15, & 17.) Overton is the registered owner of the securities demonstrating he is eligible to have the securities registered in his name, thus satisfying § 8-401 (a) (1). (SUF ¶¶ 10-11.).

(2) Overton, as registered owner of the securities and Trustee of the St. John Trust, is the appropriate person to make a request to register transfer of the Share Certificates satisfying 8-401 (a)(2) [4].   (SUF ¶¶ 7-8, 10-11); see e.g. CAPM Corp. Advisors AB v. Protegrity, Inc., 2001 Del. Ch. LEXIS 133 * 21-*22 (Del. Ch. Oct. 30, 2001)(holding that under the UCC the registered owner of share certificates making instruction is an "appropriate person")(citing 6 Del. C § 8-107).[5]

(3) Overton's request to transfer the securities contained his signature guaranteed by the Bank of America to Atlas which provided reasonable assurance that Plaintiff's

---

[4] An "appropriate person" is defined in 6 Del. C. § 8-107(a), the pertinent portions follow:
   (1) with respect to an indorsement, the person specified by a security certificate or by an effective special indorsement to be entitled to the security;
   (2) with respect to an instruction, the registered owner of an uncertificated security;
   (3) with respect to an entitlement holder, the entitlement holder.

[5] *All electronic citations annexed hereto.*

instruction was genuine satisfying §8-401 (a)(3).  (SUF ¶ 17.)  Under §8-402 (a)(1), a guaranteed signature from a bank is satisfactory assurance that the signature is genuine. See also 6 Del. C. §8-306.

(4) Neither Atlas, nor RECOM has claimed that any taxes are or would be due and owing that might prevent transfer of the shares. Overton as Trustee has testified that neither he, nor the Trustee is aware of any taxes due. There is no evidence that any applicable law regarding the collection of taxes has not been complied with.  (See SUF ¶ 23.)

(5) The **_only_** restriction on transfer noted on the Share Certificates states that the shares must be sold or transferred in conformance with the federal securities laws governing sale of unregistered securities. (See SUF ¶ 11.)  Plaintiff provided to Atlas opinions of securities counsel Robert Strumer, Esq. demonstrating that the proposed transfer of the shares by Plaintiff would not violate the federal securities laws. (SUF ¶¶ 14-15.)  Moreover, the transfer does not violate any other restriction on transfer imposed by Recom in accordance with section 6 Del. C § 8-204.  Plaintiff is not aware of any restriction on transfer of the securities that is not noted on the securities. (SUF ¶ 24.)  Thus, having complied with the federal securities laws governing sale of restricted securities, no other restriction exists preventing transfer of the shares.

(6) Atlas has notified Recom that it would register transfer of the securities unless within 30 days Recom either (a) obtains a court order against transfer of the shares, or (b) posts an indemnity bond as required by § 8-403(b).  Absent Recom obtaining a court order against transfer or posting a bond, Atlas is obligated to transfer the Share Certificates. See 6 Del. C. § 8-403(b).  Because Recom has done neither, §8-403 is

satisfied.  On October 10, 2005 Atlas, in an apparent attempt to invoke immunity under §
8-403(b), notified Recom that the Share Certificates have been properly presented to
Atlas from Overton for registration of transfer in due form.  (SUF ¶ 20.)  The October 10,
2005 notification is an admission by Atlas that the request by Overton had satisfied 6 Del.
C. § 8-401, as the notification states in part: "it appears that the certificated are in due
form for registration of transfer …."  Mirroring the language of 6 Del. C. § 8-403(b), the
letter states that Atlas "shall proceed to register the transfer as requested" unless Recom
"do one of the following:"

> a. Obtain an appropriate restraining order or injunction issued by a court of
> competent jurisdiction;
>
> b. Furnish to us a satisfactory indemnity bond protective Prevectus
> Pharmaceuticals, [sic] transfer agent and registrar, or other agent or employees
> from any loss which it or they may suffer by reason of refusal to register transfer
> if [sic] the securities as requested.  (SUF ¶ 20, *compare* 6 Del. C. § 8-403)

(7)  Section 8-401(a)(7) is satisfied as the transfer by Overton and the Trust is
rightful under Rule 144 of the Securities Act of 1933.  (SUF ¶¶ 14-15.)  Rule 144 allows
the public resale of restricted securities in the public marketplace if the conditions set
forth therein are met.  Generally, there are five conditions that are to be met to invoke
Rule 144.[6]  First, one must hold the restricted securities for at least one year before the
restricted securities can be sold in the public marketplace. See Rule 144(d)(1)  Generally,
the holding period begins to run when full value has been tendered for the securities.  See
Id. The holding period can also "tack," for subsequent acquirers if the securities were

---

[6] A copy of Rule 144 is annexed hereto for the convenience of the Court.

acquired from a non-affiliate[7] of the issuer.  See Rule 144(d)(2)(i)-(viii).  Second, there must be adequate current information about the issuer of the securities before the sale can be made.  See Rule 144(c).  Third, there are trading volume limitations as to the number of shares that can be sold.[8]  Fourth, the sales must be handled in all respects as routine trading transactions, and brokers may not receive more than a normal commission.  See Rule 144(g).  Fifth, at the time an order is placed, the seller must file a notice with the SEC on Form 144, if the sale involves more than 500 shares or the aggregate dollar amount is greater than $10,000 in any three month period.   See Rule 144(h). Additionally, the sale must take place within three months of filing the Form and, if the securities have not been sold, you must file an amended notice.  See Id.

However, these restrictions do not apply if (a) the holder is not an affiliate of the issuer, and (b) he has held the securities for two years.  Thus, after two-years, non-affiliates are no longer bound by Rule 144 and can sell the shares without regard to the above conditions.  See Rule 144(k).[9]

---

[7] "An 'affiliate' of an issuer is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer."  Rule 144 (a)(1)..

[8] After the one year holding period, the number of shares that can be sold in the public marketplace during any three-month period cannot exceed the greater of 1% of the outstanding shares of the same class being sold, or if the class is listed on a stock exchange or quoted on NASDAQ, the greater of 1% or the average reported weekly trading volume during the four weeks preceding the filing a notice of the sale on Form 144.  See Rule 144(e).

[9] Rule 144(k), provides in pertinent part:  "the requirements of paragraphs (c), (e), (f) and (h) of this section shall not apply to restricted securities sold for the account of a person who is not an affiliate of the issuer at the time of the sale and has not been an affiliate during the preceding three months, provided a period of at least tow years has elapsed since the later of the date the securities were acquired from the issuer or from an affiliate of the issuer.

In fact, Plaintiff has met the requirements set forth in Rule 144(k) as evidenced below and in the two opinion letters of counsel submitted to Atlas on August 17, 2005. (SUF ¶¶ 14-15.)   Plaintiff has been the holder of the Share Certificates since the formation of the St. John Trust on May 17, 2003.   (SUF ¶ 10.)   On that basis alone, Overton was a holder of the Share Certificates for at least two years when the demand was made to remove the restrictive legends on or about August 2005.   (SUF ¶¶ 12-17.) Additionally, the period of time in which St. John owned the shares are "tacked" to Plaintiff's holding period, as St. John was not an affiliate of the issuer.   (SUF ¶ 1.); see also Rule 144(d). Therefore, Plaintiff is deemed to have held the shares since October 23, 2002—the date when St. John acquired the Share Certificates.   See Rule 144(d)(2)(vi) ("Where the settlor is an affiliate of the issuer, securities acquired from the settlor by the trust or acquired from the trust of the beneficiaries thereof, shall be deemed to have been acquired when the such securities were acquired by the settler.")[10]

Defendant Atlas was on notice that the requirements of Rule 144 were met and the exemptions set forth in the Securities Act Section 4(1) and 4(2)[11] satisfied, as evidenced by the opinions of counsel that were sent to Atlas on or about August 17, 2005. (SUF ¶¶ 14-15.)  However, Atlas never registered the transfer of the Share Certificates.

There is no reasonable explanation for Atlas to withhold the registration of transfer as requested by Plaintiff.  Plaintiff had satisfied all of the requirements under §8-

---

[10]  See also Rule 144k. ("The two-year period shall be calculated as described in paragraph (d) of this section.")

[11] The exemption of registration set forth in the Securities Act is commonly referred to as the Section 4 (1-1/2) exemption because it refers to Sections 4(1) and 4(2) of the Securities Act.  Essentially, the Section 4 (1-1/2) exemption provides that transactions by any persons other than an issuer, underwriter, or dealer and transactions by an issuer not involving any public offering are exempt from Section 5 of the Securities Act requiring, inter alia, a registration statement and prospectus.

401(a)(1)-(7) and Atlas was obligated register transfer of the shares. Atlas' letter to Recom dated October 10, 2005 acknowledges that transfer is proper. (SUF ¶ 20) A transfer of the shares would not have subjected Atlas to any liability, as Atlas was protected by §8-403(d) because RECOM failed to obtain a court order or indemnity bond when notified by Atlas. (SUF ¶¶ 20-22.)

As such, Plaintiff is entitled to summary judgment in his favor declaring that Atlas' failure to transfer the Share Certificates is in violation 6 <u>Del. C</u>. § 8-401 and ordering Atlas to remove the restrictive legends and to register the transfer of Plaintiff's Share Certificates.

## <u>POINT II</u>

### **ATLAS IS LIABLE TO PLAINTIFF FOR THE DAMAGES PLAINTIFF SUFFERED AS A RESULT OF THE ATLAS' WRONGFUL <u>REFUSAL TO ISSUE ITS CERTIFICATES.</u>**

Under the Delaware U.C.C. applicable here, Plaintiff is entitled to damages caused by Atlas' wrongful refusal to issue its share certificates.  6 <u>Del. C</u>. § 8-401(b) states that "[I]f an issuer is under a duty to register a transfer a security, the issuer is liable to a person presenting a certificated security or an instruction for registration or to the person's principal for loss resulting from an unreasonable delay in registration or failure or refusal to register the transfer."

The damages suffered by Plaintiff are extensive as the share price of Signalife (f/k/a Recom has decreased significantly since August 16, 2005, the date Plaintiff first requested Atlas to register transfer of the  Share Certificates.  The share price on the day Overton first submitted a written request to Atlas to transfer the Share Certificates was

$3.30. (SUF ¶ 16) . The closing price of Signalife stock as of July 7, 2006 was $2.90. (SUF ¶ 16). Plaintiff has thus suffered a loss of $.40 per share or $ 35,332.80 in total as of July 7, 2006.  Consequently, Atlas is liable for this difference in the market value of the Share Certificates based on the Company's current stock price and the stock price at the time the request to issue and transfer the shares was made.  Plaintiff is also entitled to attorney's fees because of the Company's willful disregard of the Plaintiff's rights. Under Delaware law, the Court of Chancery has held that where, as here, "[t]here is no evidence in record that [the issuer] had any reasonable justification to refuse to transfer the shares to plaintiffs' names on the books of the issuer," the refusal was "at its own peril."  See Loretto Literacy & Benevolent v. Blue Diamond Coal Co., 444 A.2d 256, 260-61 (Del. Ch. 1982)(held that attorneys' fees and costs could be assessed where the refusal was not reasonable even without a showing of bad faith.)

## POINT III

### IN THE ALTERNATIVE ATLAS IS LIABLE TO PLAINTIFF UNDER COMMON LAW CONVERSION.

Under Utah common law, a "conversion is an act of willful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession."  See Allred v. Hinkley, 328 P.2d 726, 728 (Utah 1985). Although conversion is an intentional tort, "it does not however require a conscious wrongdoing, but only an intent to exercise dominion or control of the goods inconsistent with the owner's right."  Id.  As set forth above, Atlas' refusal to remove the restricted legends and to register the transfer was wrongful and without any justifiable reason. See e.g. Broadcourt Capital Corp. v. Summa Medical Corp., 972 F.2d 1183, 1192-93 (10th

17

Cir. 1992)(affirming district court verdict of conversion for a violation the New Mexico UCC duties concerning registration of transfer).  As such, Plaintiff is entitled to the full value of the Share Certificates as of August 17, 2005 ($3.30 a share)—which is when Plaintiff made his demand to have the restrictive legends removed.

## CONCLUSION

**WHEREFORE,** Plaintiff respectfully requests that the Court issue an order:

(1) granting summary judgment in favor of Plaintiff;

(2) declaring that Atlas' failure to transfer the Share Certificates is in violation 6 Del. C. § 8-401;

(3) ordering Atlas to remove the restrictive legends and to register the transfer of Plaintiff's  Share Certificates;

(4) awarding Plaintiff damages pursuant to 6 Del. C. § 8-401(b); and

(5) awarding Plaintiff reasonable attorneys' fees, costs, and any other further relief the Court deems just and proper.

In the alternative if the Court finds Atlas liable under the common-law tort of conversion, Plaintiff respectfully requests that the Court issue an order:

(1) granting summary judgment in favor of Plaintiff;

(2) awarding Plaintiff damages in the amount of at least $291,495, which is the value the shares would have been sold for if Atlas had registered transfer of the shares when first requested to do so by Plaintiff; and

(3) awarding Plaintiff reasonable attorneys' fees, costs, and any other further relief the Court deems just and proper.

New York, New York

Dated:  July 10, 2006.

         _/S PHILLIP KIM_____
         PHILLIP KIM (*admitted pro hac vice*)
         THE ROSEN LAW FIRM, P.A.
         350 Fifth Avenue, Suite 5508
         New York, NY 10118
         Telephone: (212) 686-1060
         Facsimile: (212) 202-3827

         C. Richard Heniksen, Jr., Esq. #1466
         Timothy J. Williams, # 10850
         HENRIKSEN & HENRIKSEN, P.C.
         320 South 500 East
         Salt Lake City, Utah 84102
         Telephone: (810) 521-4145
         Facsimile: (810) 355-0246

         Attorneys for Plaintiffs