DIANNA M. GIBSON (7533)
MICHAEL P. PETROGEORGE (8870)
PARSONS BEHLE & LATIMER
One Utah Center
201 South Main Street, Suite 1800
Salt Lake City, UT  84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111

*Attorneys for Defendant*

---

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| STAN OVERTON, individually and as TRUSTEE OF THE MAY 17, 2003 BARON ST. JOHN REVOCABLE LIVING TRUST,<br><br>        Plaintiffs,<br><br>vs.<br><br>ATLAS STOCK TRANSFER, INC.,<br><br>        Defendant. | Case No.  2:06cv00153 BSJ<br><br>**ATLAS' COMBINED (1) MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CONVERSION CLAIM, AND (3) MEMORANDUM IN SUPPORT OF ITS MOTION FOR FURTHER DISCOVERY UNDER RULE 56(f)**<br><br>Judge Bruce S. Jenkins<br><br>***[Electronically filed]*** |

---

        Defendant Atlas Stock Transfer, Inc. ("Atlas") submits this combined (1) memorandum

in opposition to plaintiff Stan Overton's ("Overton") motion for summary judgment, (2)

memorandum in support of its cross-motion for summary judgment in plaintiff's conversion

claim, and (3) memorandum in support of its motion for further discovery under Rule 56(f).

## INTRODUCTION

In October 2002, Baron St. John ("St. John") received 29,444 shares of restricted common stock in Recom Managed Systems, Inc. ("Recom")[1] pursuant to a Settlement Agreement and Mutual General Release ("Settlement Agreement") by and between St. John (and others) and Dr. Budimir Drakulic ("Drakulic").  Under the terms of the Settlement Agreement and SEC Rule 144 ("Rule 144"),[2] incorporated into the Settlement Agreement by reference, St. John's shares of Recom stock were restricted, and St. John was prohibited from selling, assigning or otherwise transferring the shares for a period of one year.  In May 2003, less than seven months after he received the shares, and in plain violation of the Settlement Agreement and Rule 144, St. John transferred those shares to Overton.  The stock certificates were issued to Overton individually, and contained the same restrictive legend as the certificate originally issued to St. John.

In August 2005, Overton demanded that Atlas, as the transfer agent for Recom, remove the restrictive legends from his stock certificates.  Having learned of the original transfer from St. John to Overton in violation of the Settlement Agreement and Rule 144, and having reason to believe that Overton had himself engaged in certain short sale transactions with regard to the restricted stock in violation of Rule 144,[3] Recom, through legal counsel, instructed Atlas not to

---

[1] Recom is now known as Signalife, Inc.

[2] Rule 144 was promulgated by the Securities Exchange Commission ("SEC") pursuant to its authority under the Securities Act of 1933 (the "Securities Act").

[3] A short sale is one where the seller enters into an agreement to sell shares to the buyer at sometime in the  future. The seller bets that the price of the stock will fall, and that he will be able to buy stock at the lower price to cover the sell at the higher price, thereby making a profit.  The buyer, on the other hand, bets that the price of the stock will go up, and that he will make a profit having secured it from the seller at the lower price.  In a short sale transaction, if the price of the stock increases the seller suffers the loss, whereas if the price of the stock goes down the buyer

remove the restrictive legends.  When Atlas followed Recom's instructions, Overton brought this suit, asserting claims against Atlas for wrongful refusal to register a transfer and conversion.[4] Shortly after filing his Second Amended Complaint, and prior to any discovery being taken, Overton moved for summary judgment on both claims.

As discussed below, Overton's motion for summary judgment must be denied because there exists a genuine issue of material fact regarding whether Overton was actually entitled to transfer the stock under the Uniform Commercial Code, and whether Altas acted reasonably and prudently under the circumstances in refusing to remove the restrictive legends.  For example, there are genuine issues of material fact regarding whether the initial transfer from St. John to Overton violated the Settlement Agreement and Rule 144, and whether Overton himself violated Rule 144 by engaging in short sell transactions relating to the restricted shares.

Atlas' cross motion for summary judgment on Count II—Conversion should be granted, however, because under California law, a transfer agent cannot be held liable for conversion for delay in transferring or refusing to transfer stock, even if such delay or refusal is wrongful and might subject the issuer to liability.

Finally, this Court should at least grant Atlas' motion for further discovery under Rule 56(f) of the Federal Rules of Civil Procedure, and deny or continue Overton's motion for summary judgment until Atlas has been allowed adequate discovery on the remaining issues of fact.

---

suffers the loss.

[4] For reasons unclear to Atlas, Overton did not name Recom in this suit, and has not asserted any claims against it.

<u>**RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**</u>

Atlas responds to and disputes Overton's Statement of Undisputed Material Facts as follows:

<u>Overton's Fact 1:</u>        *On or about October 23, 20002 [sic] non-party Baron St. John ("St. John") acquired restricted stock of Recom (now known as SignaLife) pursuant to a settlement agreement entered into by and between St. John along with several other investors on the one hand, and non-party Budimir Drakulic ("Drakulic")—a  Recom officer on the other.*

<u>Atlas' Response:</u>  Undisputed.  Atlas specifically asserts, however, that Recom was an intended third party beneficiary and/or assignee under the Settlement Agreement.  *See infra* Atlas' Statement of Material Facts ("Atlas SOF") ¶¶ 1(a) & (b).

<u>Overton's Fact 2</u>:        *At all relevant times herein Recom was Delaware Corporation.*

<u>Atlas' Response:</u>        Undisputed.

<u>Overton's Fact 3:</u>        *As part of the settlement agreement, the 29,444 shares of restricted common stock of Recom was issued to St. John and to other investors on or about October 23, 2002 in exchange for a collective payment of $34,000 and a full release of claims against Drakulic.*

<u>Atlas' Response:</u>        Undisputed.

<u>Overton's Fact 4:</u>        *Neither the Plaintiff, Recom, nor Atlas were parties to that settlement agreement.*

<u>Atlas' Response:</u>  Undisputed.  Atlas specifically asserts, however, that Recom was a third party beneficiary and/or assignee under the Settlement Agreement, and that Atlas was Recom's agent.  *See infra* Atlas SOF ¶¶ 1(a) & (b).

<u>Overton's Fact 5:</u>       *Recom changed its name to Signalife on or about November 2005.*

<u>Atlas' Response:</u>  Undisputed.

<u>Overton's Fact 6:</u>       *In [sic] April 2, 2003, Recom announced a three-for-one stock split for holders of the Company stock as the close of business on April 11, 2003.*

<u>Atlas' Response:</u>  Undisputed.

<u>Overton's Fact 7:</u>       *On May 17, 2003 two share certificates bearing nos. 3790 and 4287 of restricted RECOM common stock for 29,444 and 58,888 shares, respectively, (collectively "Share Certificates") were transferred from St. John to the Baron St. John Revocable Living Trust, Stan Overton, as Trustee (the "St. John Trust").*

<u>Atlas' Response:</u>  Disputed.  There is a genuine issue of material fact regarding whether the St. John Revocable Living Trust ("St. John Trust") was ever lawfully formed.  St. John's signature on the Revocable Living Trust Agreement is not notarized, and there is no stamp or other indication of the date it was actually signed.  Even assuming it was lawfully formed, Overton has not submitted any admissible evidence to establish that St. John's shares were transferred to the St. John Trust, as opposed to Overton individually.  The stock certificates were issued to Overton individually, and his own letters to his counsel and to Atlas indicate that ***he*** acquired the shares through a "private transaction" with St. John.  Tellingly, Overton did not assert his claim that the transfer was to the St. John Trust until after Recom asserted that the transfer violated the Settlement Agreement.  *See* Declaration of Paul N. Taylor in Opposition to Plaintiff's Motion for Summary Judgment ("Taylor Decl.") at ¶¶ 6-7, attached hereto as Exhibit A; Declaration of Mitchell J. Stein in Opposition to Plaintiff's Motion for Summary Judgment ("Stein Decl.") at ¶ 16, attached hereto as Exhibit B; Declaration of Jerry Rowley in Opposition

to Plaintiff's Motion for Summary Judgment ("Rowley Decl.") at ¶¶ 7-8 & 11 and Exs. 1-4,

attached hereto as Exhibit C; Declaration of Dr. Budimir Drakulic in Opposition to Plaintiff's

Motion for Summary Judgment ("Drakulic Decl.") at ¶ 18, attached hereto as Exhibit D;

Declaration of Stan Overton ("Overton Decl.") at Exs. 1 & 3-5.

Overton's Fact 8:     *Prior to St. John's transfer of the Share certificates, St. John sent a

letter to Drakulic informing him of the transfer.*

Atlas' Response:  Disputed.  Atlas objects to the admissibility of the purported letter on

the basis of foundation, authentication and double hearsay.  The purported letter is not attached

to a declaration from St. John, the purported author, but to Overton's own declaration.  Atlas

further asserts that Drakulic never received this purported letter,[5] and that even if it was received,

it failed to comply with the notice requirements set forth in Section 9 of the Settlement

Agreement.  *See* Overton Decl. at Ex. 2; Drakulic Decl. at ¶¶ 11, 14, 19 & 20 and Ex. 1; Stein

Decl. at ¶¶ 10 & 17.

Overton's Fact 9:     *Neither Drakulic, nor RECOM objected to the transfer to the St.

John Trust.*

Atlas' Response:  Disputed.  *See* Atlas' Response to Overton's Fact 8.

Overton's Fact 10:     *The St. John Trust maintained continued ownership of the Shares*

*Certificates in the name of its trustee Overton since the creation of the St. John Trust (May 2003)*

*without Recom raising any issues concerning the transferred shares, or objecting in any way to*

---

[5] Overton produces no evidence, such as a return receipt or fax transmission confirmation sheet, to establish that the letter was actually sent to and received by Drakulic.

*Overton holding the shares as trustee of the St. John Trust prior the instant attempts to have the shares registered and transferred.*

Atlas' Response:  Disputed.  The stock certificates, the only admissible evidence of the transfer, were issued to Overton as an individual.  There is no reference to the St. John Trust, or to Overton as its "trustee."  *See* Overton Decl. at Exs. 3-4; Taylor Decl. at ¶ 7; Rowley Decl. at ¶ 11; Stein Decl. at ¶ 16; Drakulic Decl. at ¶ 18.

Overton's Fact 11:    *The Share Certificates transferred to Plaintiff contained the following Rule 144 restrictive legend:*

> *The shares represented by this certificate have not been registered under the Securities Act of 1933.  The shares have been acquired for investment and may not be altered sold or otherwise transferred in the absence of an effective Registration Statement for the shares under Securities Act of 1933 or a prior opinion of counsel satisfactory to the issuer that registration is not required under the Act.*

Atlas' Response:  Undisputed.

*Overton's Fact 12:*    *On August 16, 2005 Overton transmitted two letters to Atlas (one for each Share Certificate) requesting that Atlas issue to him new Share Certificates without the restrictive legends set forth above or any other restrictions of transfer.*

Atlas' Response:   Undisputed.  Atlas notes, however, that these letters fail to affirm that Overton did not engage in short sale transactions with regard to the restricted securities, as is standard protocol when requesting a Rule 144(k) transfer.  *See* Overton Decl. at Ex. 5; Taylor Decl. at ¶ 3; Rowley Decl. at ¶ 8 & Ex. 2.

*Overton's Fact 13:*    *The letters also advised that Atlas would shortly be receiving an opinion letter from Overton's special securities counsel, Robert M. Strumor, Esq. certifying that the transfer of the securities did not violate the securities laws.*

<u>Atlas' Response:</u>   Undisputed.  *But see* Response to Overton's Fact 12.

<u>Overton's Fact 14</u>:     *On August 17, 2005, Robert Strumor, Esq., as special securities counsel to Overton, sent two opinion letters (one for each of the Share Certificates) to Atlas requesting that Atlas issue new Share Certificates registered in the name of Overton and without any restrictive legend or other restriction on transfer.*

<u>Atlas' Response</u>:  Undisputed.  However, these letters are not from Mr. Taylor, Recom's counsel, and Atlas was specifically informed by Recom that only an opinion from Mr. Taylor would constitute an "opinion of counsel satisfactory to the issuer" for purposes of Rule 144.  These letters also fail to affirm that Overton did not engage in short sale transactions with regard to the restricted securities, as is standard protocol when requesting a Rule 144(k) transfer.  *See* Overton Decl. at Ex. 5; Taylor Decl. at ¶ 3; Rowley Decl. at ¶ 8 & Ex. 2; *see also* Atlas' SOF ¶¶ 19-20 & 24.

<u>Overton's Fact 15</u>:     *The August 17, 2005 opinion letters in all relevant aspects were the same.  The letters state that in the opinion of Mr. Strumor: (1) the Common Stock was duly authorized and validly issued by the Company; (2) Overton acquired the common stock on or about May 17, 2003 and has been the registered owner continuously since September 26, 2003 (58,888 shares) and December 14, 2004 (29,444 shares) and is entitled to the Section 4 (1/12) exemption from registration for a private transactions [sic]; (3) Overton is not an affiliate of the Company as defined in the Securities and Exchange Act of 1933 ("1933 Act") or in Rule 144 nor was Overton an affiliate during the 90 days preceding the date of the opinion letters; (4) Overton is lawfully entitled to the exemption from the registration requirements of the 1933 Act provided for in Rule 144, and has satisfied the two year holding period requirement and therefore may be*

*issued new Share Certificates without restrictive legend or any other restrictions on transfer or sale; and (5) no other opinions were necessary for Atlas to remove the restrictive legends from the Share Certificates.*

Atlas' Response:   Undisputed.  Atlas asserts, however, that Mr. Strumor's letters did not constitute an "opinion of counsel satisfactory to [Recom]," as the issuer of the stock, and did not establish Oveton's right and entitlement to have the restrictive legends removed pursuant to Rule 144(k).  *See* Atlas' SOF ¶¶19-20 & 24-45; *see also* Response to Overton's Fact 15.

Overton's Fact 16:      *On August 17, 2005, the closing price of Signalife's common stock, that is traded on the American Stock Exchange, was $3.30.  Since that time, the Company's stock has experienced a steady downtrend and as of July 7, 2006 trades at $2.90 per share.*

Atlas' Response:   Disputed.  Atlas objects to admissibility of the cited documents on the basis of foundation and hearsay.  The trading price of stock on the OTC:BB or American Stock Exchange (AMEX) trading charts speak for themselves, and this Court can take judicial notice of the publicly stated stock price.

Overton's Fact 17:      *On or about August 18, 2005, Overton sent authorizations, containing his guaranteed signature—by Bank of America—to Atlas to transfer his Share Certificates to the Allan Migdall Attorney Trust Account in furtherance of the sale of the Share Certificates to a bona fide purchaser for value.*

Atlas' Response:   Atlas admits that the authorizations appear to have been sent, but disputes that they have any validity or relevance.

Overton's Fact 18:      *By letter dated September 21, 2005, Mr. Strumor sent another request to Atlas demanding that the restrictive legends be removed from the Share Certificates.*

<u>Atlas' Response:</u>  Undisputed.

<u>Overton's Fact 19:</u>    *By letter dated September 29, 2005, RECOM, through its counsel, Paul M. [sic] Taylor, Esq., informed Atlas that "under no circumstances" should Atlas issue, replace, or otherwise deal with the Share Certificates because of St. John's purported breach of an agreement St. John entered into in 2002, presumably the settlement agreement between St. John and Drakulic, to which neither RECOM, the St John Trust, nor Overton was a party.*

<u>Atlas' Response:</u>  Undisputed.  *But see* Atlas' SOF ¶ 16.

<u>Overton's Fact 20</u>:    *On October 10, 2005, Atlas notified RECOM that the Share Certificates have been presented to Atlas by Overton for registration of transfer.  Atlas stated in the letter that "[I]t appears that the certificates are in due form for registration of transfer…"  The letter further states Atlas "shall proceed to register the transfer as requested" unless RECOM "do one of the following":*

   a.  *Obtain an appropriate restraining order or injunction issued by a court of competent jurisdiction;*

   b.  *Furnish to us a satisfactory indemnity bond protecting Prevectus Pharmaceuticals, Inc. [sic] the transfer agent and registrar, or other agent or employees from any loss which it or they may suffer by reason of refusal to register transfer if [sic] the securities as requested.  (See Kim Decl. Ex. 4).*

<u>Atlas' Response:</u>  Undisputed.  *But see* Atlas' SOF ¶¶ 19-20.

<u>Overton's Fact 21:</u>    *By letter dated October 12, 2005 Mr. Strumor, reminded Atlas of its independent duties owed to Overton and that the purported reason proffered by RECOM in the September 29, 2005 letter did not provide a basis for Atlas to refuse to remove the restrictive legend and transfer the share certificates.  Mr. Strumor demanded that Atlas issue and transfer the share certificates.*

<u>Atlas' Response:</u>  Atlas admits that the letter was sent and received, but disputes the validity of the statements made by Mr. Strumor in the letter.

<u>*Overton's Fact 22:*</u>    *In an October 21, 2005 letter, RECOM reiterated its prior instructions to Atlas not to transfer or lift any restrictive legends from the Share Certificates. The letter further states that "If you intend to lift the legends…notwithstanding our instructions to you, please immediately notify me in writing…"*

<u>Atlas' Response:</u>   Atlas does not dispute that the letter was sent and received, but notes that Overton conveniently omits relevant portions of the letter stating that the purpose was to confirm a conversation between Mr. Taylor and Frank Kimball of Atlas.  *See* Atlas' SOF ¶¶ 19-20.

<u>Overton's Fact 23:</u>    *At all relevant times herein, Plaintiff has no reason to believe the applicable laws concerning taxes have or will be violated if the Shares Certificates are registered and transferred as Plaintiff had requested of Atlas.*

<u>Atlas' Response:</u>  Disputed.  Atlas objects to Overton's Fact 23 on the basis of relevance, foundation and improper legal conclusion.  Even assuming that a transfer for St. John's benefit actually occurred (which Atlas disputes), Overton fails to establish how he would know St. John's tax status.

<u>Overton's Fact 24:</u>    *At all relevant times herein, Plaintiff is not aware of any applicable restrictions of transfer of the Share Certificates other than the restrictive legends.*

<u>Atlas' Response:</u>   Disputed.   Atlas' counsel has written numerous letters and had numerous conversations with Overton and/or his representatives and agents wherein Overton was put on actual notice that the Settlement Agreement had been breached, and that further

transfer of the shares would not therefore be allowed.  *See* Taylor Decl. at ¶¶ 4-5, 8-10, 14 & 22 and Exs. 1, 3-4, 6 & 10.

## ATLAS' STATEMENT OF MATERIAL FACTS

To provide proper context for this case and the issues raised in Overton's motion for summary judgment, Atlas submits the following statement of material facts:

1.      On October 23, 2002, Drakulic entered into the Settlement Agreement with certain investors, including St. John.  *See* Drakulic Decl. at ¶¶ 3, 9 & 15 and Ex. 1; Stein Decl. at ¶¶ 4-5

       a.      Section 2 of the Settlement Agreement provides that St. John would receive, among other things,

> an amount of shares of restricted common stock (under Rule 144) in a public company having the features set forth in Schedule B attached hereto.  The amount of shares shall be in the precise amount set forth opposite the names of the investors as set forth on Schedule B, and shall be in certificates duly authorized for issuance by the Board of the public company and duly issued by the transfer agent for the public company.

It was understood by all of the parties to the Settlement Agreement that Recom was the "public company" referred to in paragraph 2, and described in Schedule B, and it was Recom's Board of Directors who ultimately issued the shares to St. John containing the restrictive legend.  *See* Drakulic Decl. at ¶¶ 7-8 and Ex. 1; Stein Decl. at ¶¶ 7-8.

       b.      Section 12 of the Settlement Agreement provides:

> Neither this Agreement, any portion hereof ***nor any rights hereunder*** may be assigned or transferred by [St. John], without the ***prior written consent of Drakulic*** unless such assignment or transfer is made by the Investor by bequest or through inheritance or for estate planning purposes to, or for the benefit of, any spouse, ancestor, descendent or other family member of [St. John] . . . .

> Notwithstanding the foregoing sentence, ***any transfer made pursuant to the exception contained therein must be noticed to Drakulic ten (10) business days prior to completion and Drakulic shall have the right to object if the purpose of the assignment or transfer is unlawful in any manner.*** Drakulic may freely assign the benefits of this Agreement within his sole and absolute discretion to any person except David Mulberg. ***This Agreement shall be binding upon and shall inure to the benefit of the permitted successors, licenses, assignees and transferees of the parties hereto.***

(Emphasis added). In accordance with this provision, Drakulic's rights under the Settlement Agreement were subsequently transferred and assigned to Recom. *See* Drakulic Decl. at ¶ 10 and Ex. 1; Stein Decl. at ¶ 9

      c.    Section 9 of the Settlement Agreement provides that any notices required thereunder,

> shall be given by addressing the same to such other party or parties at their addresses listed on the signature pages of this Agreement, and by depositing the same so addressed, postage prepaid, certified mail, return receipt requested . . . , delivering the same personally to such other party or parties, or by electronic facsimile.

*See* Drakulic Decl. at ¶ 11 and Ex. 1; Stein Decl. at ¶ 10.

      d.    Section 10 of the Settlement Agreement provides that it "shall be construed and governed by the laws of the State of California." *See* Drakulic Decl. at Ex. 1; Stein Decl. at ¶ 11.

    2.    It was extremely important to Drakulic that the Settlement Agreement restrict the transfer of Recom's stock in order to avoid short sales and other early transfers which would not only violate Rule 144, but substantially dilute the market for and profoundly reduce the value of the common stock. *See* Drakulic Decl. at ¶ 9; Stein Decl. at ¶ 5.

3.     On October 23, 2002, St. John received 29,444 shares of Recom restricted stock pursuant to the Settlement Agreement.  *See* Drakulic Decl. at ¶ 15 and Ex. 1; Stein Decl. at ¶ 12; *see also* Kim Decl. ¶ 4 and Ex. 1.

4.     The certificate for St. John's restricted Recom stock stated as follows:

> The shares represented by this certificate have not been registered under the Securities Act of 1933.  The shares have been acquired for investment and may not be offered, sold or otherwise transferred in the absence of an effective Registration Statement for the shares under the Securities Act of 1933 or a prior opinion of counsel satisfactory to the issuer that registration is not required under the Act.

*See* Stein Decl. at ¶ 19; Drakulic Decl. at ¶ 16.

5.     Under the Settlement Agreement and Rule 144, St. John was required to hold his restricted shares for a period of at least one year before any lawful transfer could be made.  *See* Settlement Agreement §§ 2 & 12, Drakulic Decl at Ex. 1; Taylor Decl. at ¶ 3.

6.     On or about April 2, 2003, Recom announced a three-for-one stock split for holders of Recom stock as the close of business on April 11, 2003.  As a result of this split, St. John's holding in Recom increased to 88,332 shares of restricted common stock.  *See* Drakulic Decl. at ¶ 17; Stein Decl. at ¶ 14; Kim Decl. at ¶ 5, Ex. 2.

7.     On or about May 17, 2003, St. John transferred all of his restricted Recom stock to Overton.  Two stock certificates were issued:  Certificate No. 3790, for the 29,444 shares St. John originally obtained under the Settlement Agreement, and Certificate No. 4287, for the 58,888 shares St. John received as a result of the three-to-one stock split.  Both certificates were issued in the name of "Stan Overton," individually, and contained the same restrictive legend as the certificate originally issued to St. John.  Neither certificate makes any reference to the St.

John Revocable Living Trust ("St. John Trust"), or to Overton as its "trustee." *See* Overton Decl. at ¶¶ 7-8 and Exs. 3-4.

8.      Neither Drakulic nor his legal counsel received anything from St. John putting them on notice of the transfer from St. John to Overton, and there is no record evidence that any such notice was ever sent to Drakulic in accordance with Section 9 of the Settlement Agreement. *See* Drakulic Decl. at ¶¶ 14 & 19; Stein Decl. at ¶ 17.

9.      Drakulic never authorized or approved the transfer of St. John's shares to Overton, either in an individual capacity, or as "trustee" for the St. John Trust. *See* Drakulic Decl. at ¶ 20.

10.     At the time of the transfer to Overton, St. John had held his restricted shares for no more than seven months. *See* Drakulic Decl. at ¶¶ 15 & 18; Stein Decl. at ¶ 12; Rowley Decl. at ¶ 10 and Ex. 4; Taylor Decl. at ¶ 5.

11.     In late 2004, Paul Taylor, Recom's lawyer, learned during a telephone conversation with Overton's legal counsel that Overton wished to sell his restricted Recom stock in order to cover his short sales of Recom stock. Mr. Taylor believed, based on his experience in securities law, that it would be a violation of Rule 144 for Overton to cover his short sales of Recom stock using his restricted Recom shares. *See* Taylor Decl. at ¶¶ 3, 11 & 20.

12.     On August 16, 2005, Overton sent a letter to his legal counsel, Robert Strumor, regarding the transfer of St. John's shares to him. The letter states that the shares were "acquired by me in a private transaction not involving a public offering on or about May 17, 2005." There is no mention of the St. John Trust, or to Overton as its "trustee." *See* Overton Decl. at Ex. 5; Rowley Decl. at ¶ 8 and Ex. 2.

13.     On August 16, 2005, Overton also sent two letters to Atlas, identical in form and substance, indicating that he "[is] the registered owner of" the Recom stock, and "requesting that a new certificate without a restrictive legend or other restrictions on transfer be issued" to him, individually.   There is no mention of the St. John Trust, and no reference to Overton as its "trustee" in these letters.  *See* Overton Decl. at Ex. 5; Rowley Decl. at 7 and Ex. 1.

14.     On August 17, Overton's counsel, Mr. Strumor, wrote a letter to Atlas requesting that it "remove the restrictive legend" from the stock certificates, and "issue a new share certificate . .. without any restrictive legend or other restrictions on transfer registered in the name of Overton."[6]   Both of these letters state that "Overton acquired the Common Stock in a private transaction not involving a public offering on or about May 17, 2003," and contain the opinion of Mr. Stumor that, among other things, "Overton is entitled to the exemption from the registration requirements of the 1933 Act provided in the provisions of Rule 144(k). . . ."  There is no mention of the St. John Trust, and no reference to Overton as its "trustee."  *See* Declaration of Robert M. Stumor at ¶ 4 and Ex. 1; Rowley Decl. at ¶ 9-10 and Exs. 3-4.

15.     Mr. Strumor wrote the August 17 letters as counsel for Overton, and Atlas was subsequently informed by Recom that the letters did not constitute an "opinion of counsel satisfactory to the issuer" (i.e., Recom) for purposes of Rule 144 (or the Settlement Agreement).  *See* Rowley Decl. at ¶¶ 12-13 & 16 and Exs. 5 & 7; Taylor Decl. at ¶¶ 17 & 20-21 and Exs. 7 & 9.

16.     On September 29, 2005, Paul N. Taylor, acting as counsel for Recom, sent a letter to Atlas stating:

---

[6] The first letter referred to Certificate No. 3790, and the second letter referred to Certificate No. 4287.

> Under no circumstances shall any share certificate appertaining or relating to Stan Overton or Baron St. John be issued, replaced or otherwise dealt with by transfer agent – directly or indirectly – as Mr. St. John is in violation of the agreement entered into in 2002 regarding that share certificate and [Recom] is hereby freezing all activity pertaining thereto.

*See* Taylor Decl. at ¶ 17 and Ex. 7; Rowley Decl. at ¶ 13 and Ex. 5.

17.     On October 10, 2005, Atlas sent a letter to Recom stating:

> Please be advised that certificate numbers 2971 for 58,888 shares and 3790 for 29,444 shares registered to Stan Overton has been presented for registration of transfer. . . .
>
> It appears that the certificates are in due form for registration of transfer and the presentation may be on behalf of a bona fide purchaser of the securities.
>
> Please, therefore, be further advised that unless within 30 days from the date of this letter you do one of the following:
>
> (a)      Obtain an appropriate restraining order or injunction by a court of competent jurisdiction.
>
> (b)      Furnish to us a satisfactory indemnity bond protecting Provectus Pharmaceuticals, Inc. [sic] transfer agent and registrar, or other agent or employees from any loss which it or they may suffer by reason of refusal to register transfer if [sic] the securities as requested; we shall proceed to register the transfer as requested.

*See* Rowley Decl. at ¶ 14 and Ex. 6; Taylor Decl. at ¶ 19 and Ex. 8.

18.     The October 10 was a form letter sent as standard operating procedure as a matter of routine in certain scenarios such as a missing certificate, etc. (even though no certificate was missing in this case).  It was not intended to be an admission or determination by Atlas that the requirements of Rule 144 had been satisfied, or that Overton was actually entitled to have the restrictive legend removed.  *See* Rowley Decl. ¶ 15; Taylor Decl. ¶ 19.

19.     Sometime after Recom received the October 10 letter from Atlas, Mr. Taylor, as counsel for Recom, had a telephone conference with Frank Kimball of Atlas.   During this telephone conference, Messrs. Taylor and Kimball discussed, among other things, (a) Recom's belief that Overton had engaged in short sales involving the restricted shares, in violation of Rule 144, (b) Recom's belief that St. John had breached the Settlement Agreement, and (c) Mr. Tayor's opinion that the lifting of the restrictive legends from Overton's stock certificates could subject both Recom and Atlas to liability for violation of federal securities law.  *See* Taylor Decl. at ¶ 20.

20.     On October 21, 2005, in response to the October 10, 2005 letter, and based on his prior phone call with Mr. Kimball, Mr. Taylor sent a letter to Atlas stating:

> The purpose of this letter is to confirm my conversation with Frank on October 19, 2005 that Atlas Stock Transfer will not be lifting any restrictive legend for certificate numbers 2971 . . . and 3790 . . . registered to Stan Overton.
>
> Again, no 144 legends may be lifted (whether standard or under rule 144(k)) regarding any stock of Recom . . . absent the receipt by you of an opinion letter signed by Mr. Paul N. Taylor.

*See* Taylor Decl. at ¶ 21 and Ex. 9; Rowley Decl. at ¶ 16 and Ex. 7.

21.     As of October 21, 2005, Atlas had been informed by Recom, the issuer of the restricted shares, through Mr. Taylor, that Recom had reason to believe Overton has himself been involved in violations of Rule 144, and had obtained his shares from St. John in violation of Rule 144 and in breach of the Settlement Agreement, and had been specifically instructed not to remove the restrictive legends.  *See infra*, SOF ¶¶ 14-18.

22.     Based on the information provided by Recom, through Mr. Taylor, Atlas had reason to believe that St. John had breached the Settlement Agreement and had not satisfied the

requirements for a transfer under Rule 144, and that Overton had himself violated Rule 144 by entering short sell transactions involving the restricted shares, and that Overton was not therefore entitled to have the restrictive legends removed from his stock certificates. *See* Rowley Aff. at ¶ 18.

23.     Atlas has no means by which to independently verify whether all the conditions of Rule 144 has been met by a shareholder (i.e., Overton) requesting the removal of a restrictive legend, and thus requires a letter from counsel acceptable to the issuer (i.e., Recom) before it will remove a restricted legend. *See* Rowley Decl. ¶ 6.

24.     As of October 21, 2005, Atlas had been informed by Recom that only an opinion letter from its own counsel, Mr. Taylor, would be satisfactory to it for purposes of the Settlement Agreement and Rule 144. *See id.* at ¶ 16 and Ex. 7.

25.     Atlas never received an opinion letter from Mr. Taylor authorizing the removal of the restrictive legends from the stock certificates, and has never been authorized by Recom to remove the restrictive legends from Overton's stock. *See id.* at ¶ 17; Taylor Decl. at ¶ 23.

## ARGUMENT

Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure is proper only when the pleadings, depositions, and affidavits on file show that there is ***no*** genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FRCP 56(c). In considering a motion for summary judgment, the evidence must be reviewed in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The nonmoving party shall be given the benefit of all reasonable inferences, and all ambiguities shall be resolved in its favor. *Id.*

I.   **OVERTON'S MOTION FOR SUMMARY JUDGMENT ON COUNT I SHOULD BE DENIED BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT REGARDING WHETHER OVERTON WAS ENTITLED TO HAVE THE RESTRICTIVE LEGEND REMOVED, AND WHETHER ATLAS ACTED REASONABLY AND PRUDENTLY UNDER THE CIRCUMSTANCES IN REFUSING TO REMOVE THOSE   LEGENDS AND REGISTER THE TRANSFER.**

In Count I of his Second Amended Complaint Overton asserts a claim for wrongful refusal to register a transfer of securities.  Overton's motion for summary judgment on this count is premised entirely on the application of Sections 8-401 and 8-407 of the Uniform Commercial Code ("UCC").  In particular, Overton argues that because Recom, the issuer of the shares, owed him a duty to remove the restrictive legends from his shares under Section 8-401, and because Atlas, as its transfer agent, owed him the same duties under Section 8-407, Atlas is directly liable to Overton for its refusal to remove the restrictive legends and register the transfers.[7]  Overton's arguments in this regard are overly simplistic, gloss over Atlas' limited role as transfer agent, and ignore a number of genuine issues of material fact surrounding Overton's actual right to have the restrictive legends removed under Section 8-401, and the reasonableness of Atlas' refusal to remove those legends under the circumstances surrounding the transactions.  For all of these reasons, Overton's motion for summary judgment on Count I should be denied.

---

[7] Overton contends that Delaware law applies to Count I because Recom is a Delaware corporation.  *See* Mem. Supp. at 9.  Atlas believes that California law applies to his claim because the Settlement Agreement by which St. John obtained the original shares states that it "shall be governed and construed by the laws of the State of California," and that its provisions "shall be binding upon and shall injure to the benefit of the permitted successors, licenses, assignees and transferees of the parties. . . ."  Settlement Agreement §§ 10 & 12, Drakulic Decl. at Ex. 1. Because California and Delaware have adopted identical versions of Article 8 of the UCC, the outcome of Overton's motion for summary judgment on Claim I is the same regardless of which state's law applies.

**A.**   **There Are Genuine Issues of Material Fact Regarding Overton's Actual Entitlement to a Transfer Under Section 8-401 of the UCC.**

Section 8-401 of the UCC states, in relevant part, as follows:

> (a) if a certified security in registered form is presented to an issuer with a request to register transfer or an instruction is presented to an issuer with a request to register transfer of an uncertificated security, the issuer shall register the transfer as requested if:

> (1)   ***Under the terms of the security*** the person seeking registration of transfer is eligible to have the security registered in its name.

> . . . .

> (7)   The transfer is in fact ***rightful or is to a protected purchaser***.

(Emphasis added).  There are at least three genuine issues of material fact regarding Overton's eligibility to have the restrictive legend removed under this provision of the UCC, any one of which require Overton's motion for summary judgment to be denied.

First, there are questions of disputed fact regarding the validity of the original transfer from St. John to Overton, and whether that transfer materially breached the Settlement Agreement and violated Rule 144, rendering Overton ineligible to have the transfer registered in his name, and preventing him from rightfully demanding the removal of the restrictive legends under Section 8-401(a)(1) and/or (7).  Under the Settlement Agreement and Rule 144, St. John was required to hold the restricted stock for at least one year.  *See* Atlas' SOF ¶¶ 1(a), 1(b), 2 & 5.  In violation of these requirements, St. John transferred the stock to Overton in May 2003, just seven months after the stock was issued to him.  *See id.* ¶ 7.  On its face, this initial transfer constituted a material breach of the Settlement Agreement and a violation of Rule 144, raising at

least a genuine issue of fact regarding Overton's purported right to demand that the restrictive legend be removed.

Overton attempts to avoid the impact of this apparently unlawful transfer by claiming that he received the restricted shares as "trustee" of the St. John Trust pursuant to the estate planning exception of the Settlement Agreement.  Atlas disputes Overton's claims.  The only admissible evidence of the transfer—i.e., the stock certificates, establish that the stock was transferred to Overton as an individual.  The stock certificates make no reference to the St. John Trust or Overton's alleged capacity as its "trustee."  *See* Altas' SOF ¶ 7.  The only "evidence" Overton submits to support his claim t the contrary is an April 23, 2003, letter purportedly from St. John to Drakulic.  *See* Overton Decl. at Ex. 2.  Drakulic never received this letter, however, and there is no admissible evidence by which Overton can establish that it was ever sent and received.[8] *See id.* ¶¶ 8-9.  All of this raises at least a genuine issue of material fact regarding the legitimacy of the initial transfer from St. John to Overton, and Overton's right to have rely on Rule 144 to demand removal of the restrictive legend.[9]

Second, there is a genuine issue of material fact regarding whether Overton himself violated the requirements of Rule 144 by engaging in short sale transactions involving the restricted shares, thereby rendering him ineligible for transfer under Section 8-401(a)(1) and/or (7).  Recom's lawyer, Mr. Taylor, learned in a telephone conference with Overton's own legal counsel that Overton wished to remove the restrictive legends from the restricted shares so that

---

[8] Even if the letter was sent, there is no evidence by which Overton can establish that it complied with the notice requirements set forth in Section 9 of the Settlement Agreement.  Specifically, there is no evidence of hand delivery, no certified mail return receipt, and no fax transmission confirmation page.

[9] There is also a genuine dispute of fact regarding whether the St. John Trust was ever lawfully formed, and when. *See infra* Atlas Response to Overton Fact 7.

those shares could be used to cover Overton's short sales of Recom's stock.  *See* Atlas' SOF ¶ 11.  Mr. Taylor conveyed this information to Atlas, and informed Atlas that he believed, based on his experience in securities law, that the short sales violated Rule 144.  *See id.* ¶¶ 19-20.  All of this raises at least a genuine issue of material fact regarding Overton's compliance with the requirements of Rule 144(k), and his right to demand removal of the restrictive legend.

Finally, there is a genuine dispute of fact over whether Atlas ever received an "opinion of counsel satisfactory to the issuer" as required by the restrictive legend and the express terms of the Settlement Agreement, and whether Overton was therefore qualified to demand removal of the restrictive legends under Section 8-401(a)(1) and/or (7).  After receiving Overton's request for removal of the restrictive legends on August 16, 2005, and the opinion letters from Mr. Overton's own legal counsel claiming compliance with Rule 144 on August 17, 2005, and understood based on its communications with Mr. Taylor that only a letter from him would be satisfactory to Recom and sufficient to allow the removal of the restrictive legend.  *See* Atlas' SOF ¶¶ 19-20.  Atlas never received any opinion letter from Mr. Taylor, and was instead informed that because Mr. Taylor had reason to believe there had been violations of the Securities Agreement and Rule 144, no letter would be coming.  *See id.*  In light of the above, there is at least a genuine dispute of fact regarding Overton's eligibility to have the restrictive legend removed, and Overton's motion for summary judgment should therefore be denied.

**B.      There Are Genuine Issues of Fact Regarding Whether Atlas Acted Reasonably and Prudently Under the Circumstances.**

It is undisputed that Atlas is not the issuer of the stock, but a mere transfer agent for Recom.  As an agent, Atlas owes Recom, its principal, fiduciary duties of loyalty and good faith, and has an affirmative obligation to follow Recom's instructions and not take action contrary to

its interests.  *See, e.g., Science Access. Corp. v. Summagraphics Corp.*, 425 A.2d 957, 962 (Del. Super. 1980) (agent owes fiduciary duties of loyalty and good faith to its principal); *Mendoza v. Rast Prod. Co., Inc.*, 45 Cal. Rptr. 3d 525, 533 (Cal. Ct. App. 2006) (same).  Atlas also has an affirmative obligation to avoid any transfer that would violate the securities laws.  *See, e.g., Cohen v. Bankers Tr.* Co.*, 445 F. Supp. 794, 797 (S.D.N.Y. 1978) (transfer agent has a "responsibility to take appropriate steps to forestall any 'illegal distribution' that might occur in connection with transactions pending before them"); *Wassel v. Eglowsky*, 399 F. Supp. 1330, 1367 (D. Md. 1975) ("[I]f the [transfer] agent knows or has reason to know that an illegal distribution would occur in connection with [a Rule 144] transaction pending before him, he should take appropriate steps to forestall such a distribution from taking place.").

Consistent with these obligations, Atlas is not obligated to register a transfer (or remove a restrictive legend) where it has reason to believe, based on the information available to it at the time, that the transfer would violate the law, or that the requesting party is not entitled to such transfer.  *See, e.g., Catizone v. Memry Corp.*, 897 F.Supp. 732, 736-737 (S.D.N.Y. 1995) (applying Del. UCC) (transfer agent under no duty to register transfer or remove restrictive legend when the transfer violated federal securities laws); *Melville v. Wantschek*, 403 F.Supp. 439, 445-446 (E.D.N.Y. 1975) (transfer agent acted reasonably and prudently in making every effort to comply with federal securities laws and was not therefore liable for refusing to make a transfer which might subject it to action by the SEC); *Travis Invest. Co. v. Harwyn Pub. Corp.*, 288 F.Supp. 519, 526-527 (S.D.N.Y. 1968) (applying N.Y. law) (refusal to remove a restrictive legend is not wrongful if the issuer and/or the transfer agent can point to reasonable grounds for such refusal).  The question of reasonableness is a question of fact which is "clearly an issue for

trial," "foreclosing summary judgment." *See, e.g., F. Dewitt v. American Stock Transfer Co.*, 433 F. Supp. 994, 1001 (S.D.N.Y. 1977).

In this case, Recom specifically instructed Atlas not to remove the restrictive legends from the stock certificates based on its belief that the original transfer from St. John to Overton violated the Settlement Agreement and Rule 144, and that Overton himself had engaged in short sale transactions involving the restricted shares in violation of Rule 144. *See* Atlas' SOF ¶¶ 16 & 19-20. Recom's lawyer further informed Atlas, based on his experience in securities law, that both Recom and Atlas might be held liable if they removed the restrictive legends knowing of potential violations of Rule 144. *See id.* ¶¶ 19-20. Finally, Recom instructed Atlas that the restrictive legends could be removed ***only*** if Atlas received an opinion letter from Mr. Taylor that the requirements of Rule 144 had been met, and that only a letter from Mr. Taylor would constitute the "opinion of legal counsel satisfactory to the issuer" required under the restrictive legends. *See id.* ¶¶ 19-20.

Based on these representations from Recom and its lawyer, Atlas had every reason to believe that Overton was not eligible to demand removal of the restrictive legends. Atlas had no basis, ability or obligation to independently very the facts surrounding the transfer to Overton from St. John, or the allegations of short sale transactions by Overton, or to otherwise determine whether the requirements of Rule 144 had been met. *See id.* ¶¶ 22-23. Based on the foregoing, there is at least a genuine issue of material fact regarding whether Atlas acted prudently and

reasonably in refusing to remove the restrictive legends from the stock, and Overton's motion for summary judgment should therefore be denied.[10]

## II.   OVERTON'S MOTION FOR SUMMARY JUDGMENT ON COUNT II SHOULD BE DENIED, AND ATLAS' CROSS MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED.

In Count II of the Second Amended complaint Overton asserts a claim for conversion based on Atlas' delay and refusal to remove the restrictive legend and register the transfer of stock.  Overton's conversion claim against Atlas fails as a matter of law.  In *Mears v. Crocker First National Bank of San Francisco*, 97 Cal. App. 2d 482, 485 (Cal. Ct. App. 1950), the California Court of Appeals held:  "there is no direct liability of a transfer agent or transfer officer to the holder for delay in transferring or refusal to transfer stock even if such delay or refusal is wrongful, and might subject the corporation itself to liability in . . . conversion."  This holding was reaffirmed in *Yuen v. U.S. Stock Transfer Co.*, 966 F. Supp. 944, 950 (C.D. Cal. 1997).  Under this established body of law, even assuming as true all of the facts as alleged by Overton, he is precluded as a matter of law from recovering against Atlas on his claims for conversion.  Overton's motion for summary judgment on Count II should therefore be denied, and Atlas' cross motion for summary judgment on that claim should be granted.[11]

---

[10] If Atlas acted reasonably and prudently in refusing to remove the restrictive legend based on the circumstances surrounding the request and the information provided by Recom and its counsel, then such removal was not "wrongful," and Atlas cannot be held liable for Overton's alleged damages.

[11] Overton urges application of Utah law to his conversion claim.  *See* Mem. Supp. at 17-18.  Overton claimed an interest in the shares as a successor and assigned of St. John under the Settlement Agreement, however, which expressly mandates the application of California law.  Even assuming *arguendo* that California law does not apply, Overton concedes that Atlas cannot be held liable for conversion insofar as Atlas had a lawful basis for its actions. *See* Mem. Supp. at 17-18.  As set forth above, *supra* Section I, there are genuine issues of material fact regarding whether Overton's had any right to have the restrictive legends removed, and whether Atlas acted reasonably and prudently under the circumstances in refusing to take such action.  The existence of such genuine issues of fact prevent Overton from obtaining summary judgment on his conversion claim regardless of which state's law applies.

### III.   THE COURT SHOULD GRANT ATLAS' MOTION FOR FURTHER DISCOVERY UNDER RULE 56(F).

If any part of Overton's motion for summary judgment cannot be denied on the declaration presented, this Court should grant Atlas' motion for further discovery under Rule 56(f) of the Federal Rules of Civil Procedure, and deny Overton's motion for judgment, or continue the motion pending further discovery.

Rule 56(f) provides as follows:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just

Overton filed his original Complaint on or about February 21, 2006. The Second Amended Complaint was filed on July 5, 2006. On July 10, 2006, before the time for filing an Answer had expired, Overton filed his motion for summary judgment. Atlas filed an Answer to the Second Amended Complaint on July 17, 2006, and no discovery has been conducted in this case.[12]

As outlined in the accompanying affidavit of Michael P. Petrogeorge, counsel of record for Atlas in this matter, insofar as the declarations of Dr. Drakulic of Messrs. Taylor, Stein and Taylor are not themselves sufficient to create genuine issues of material fact, the information necessary to oppose Overton's motion for summary judgment is in the possession of Overton and other third parties to whom Atlas does not have access or control. Further discovery in the form of interrogatories, requests for production of documents, requests for admission, and the depositions of, among others, St. John and Overton himself, is necessary to determine, among

---

[12] Overton has not even filed his Rule 26 initial disclosures (which were due July 17, 2006).

other things, the legality of the purported St. John Trust, the veracity of the April 28, 2003, letter allegedly sent by St. John to Drakulic, whether the transfer from St. John to Overton violated the Settlement Agreement and/or Rule 144, and whether Overton himself engaged in short sale transactions with respect to the restricted shares in violation of Rule 144.  All of this is relevant not only to the question of whether Overton was actually entitled to demand removal of the restrictive legends under Section 8-401 of the UCC, but to whether Atlas reasonably and prudently relied on the information provided by Recom, and followed its instructions in refusing to remove the restrictive legends.  As such, Overton's motion for summary judgment is premature, and should either be denied or continued until Atlas has had a full and fair opportunity to conduct discovery on these important issues.

## CONCLUSION

As demonstrated above, there are genuine issues of fact surrounding the validity of the original transfer from St. John to Overton, whether Overton himself engaged in short sale transactions in violation of Rule 144, and whether Atlas received an "opinion of legal counsel satisfactory to the issuer" (i.e., Recom) as required by the express language of the stock certificates.  All of these disputed issues of fact are relevant and material to the ultimate questions of whether Overton was actually entitled to demand removal of the restrictive legend under Section 8-401 of the UCC, and whether Atlas acted reasonably and properly in adhering to Recom's express instructions not to remove those legends.  Overton's motion for summary judgment on Count I should therefore be denied.

Even assuming as true all of the facts alleged in Overton's Second Amendment Complaint, his claim for conversion is barred and precluded under controlling California law.

Overton's motion for summary judgment on Count II should therefore be denied, and Atlas' cross-motion on that claim should be granted.

Finally, insofar as the existing record is insufficient to resolve Overton's motion for summary judgment on its merits, this Court should grant Atlas' motion under Rule 56(f), and enter an order denying Overton's motion for summary judgment, or continuing it pending further discovery.

DATED this 28th day of August, 2006.

/s/ Michael P. Petrogeorge
DIANNA M. GIBSON
MICHAEL P. PETROGEORGE
PARSONS BEHLE & LATIMER
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of August, 2006, I electronically filed a true and correct copy of the foregoing **ATLAS' COMBINED (1) MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CONVERSION CLAIM, AND (3) MEMORANDUM IN SUPPORT OF ITS MOTION FOR FURTHER DISCOVERY UNDER RULE 56(f)**, with the clerk of court using the CM/ECF system which sent notification of such filing to the following:

> C. Richard Henricksen, Jr.
> hhlaw@sisna.com
> Julie@henriksenlaw.com
> James@henriksenlaw.com
> Amber@henriksenlaw.com
>
> Phillip Kim
> pkim@rosenlegal.com

And that I also caused to be sent, via U.S. Mail, postage pre-paid, a true and correct copy of said document to:

> Thomas J. Williams
> Henricksen & Henriksen
> 320 South 500 East
> Salt Lake City, Utah  84102
>
> *Attorneys for plaintiff Stan Overton*

>                    /s/ Michael P. Petrogeorge